# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1846, AT LENOX.

#### PRESENT

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

ASAHEL BUCK, Jr. & another *vs.* JARED INGERSOLL.

A mortgagee of personal property may waive his claim under the mortgage, and attach the property to secure his debt, without violating any of the mortgagor's rights.

Goods of a manufacturing company were attached, and A. and B. gave a receipt therefor to the attaching officer: The company then conveyed all its personal property to A., B., C., D., E. and others, to be held by them, as their security and indemnity against all liabilities which they had assumed, or might assume and incur, as indorsers, sureties, receiptors, or promisors, for said company: The property which was thus conveyed was delivered to A. and B., for themselves and the other grantees, with an understanding that the company should proceed in its business, and that, as the property should be wrought up and changed, and new property acquired, the same should go into B.'s possession: The company proceeded, as it had done before, and D., E. and others, became sureties for some of the goods that were purchased for the company, and all the company's property, that was subsequently acquired, went into B.'s possession: A. and B. paid the judgment on which the property for which they had given a receipt was attached: C. attached the property that was in B.'s possession, to secure a sum which he had paid for the company, as their surety, and A. and B. replevied it

*Held*, that if the conveyance to A., B., C., D., E. and others, was valid, yet that A. and B. could not maintain their action of replevin, without first making a demand on the attaching officer or creditor, and stating an account of the sum due to them, pursuant to the Rev. Sts. *c.* 90, §§ 78, 79.

REPLEVIN of divers goods attached by the defendant on a writ sued out by Israel Billings against the Ashuelot Manufacturing Company. At the trial in the court of common pleas, before *Washburn* J. the plaintiffs claimed a part of said goods, viz. to the amount of $2374·49, by virtue of a mortgage ; and the residue, viz. to the amount of $1993·59, by virtue of a written agreement and oral arrangement. The mortgage (which was recorded on the 28th of June 1842) and the written agreement were made at the same time, and were as follows : " Know all men by these presents, that the Ashuelot Manufacturing Company have this day turned out all the personal property which we have in and about the factory in Dalton, and in the store, and all other personal chattels in our possession whatever, and we do hereby convey and deliver the same to Varnum Holden, Asahel Buck, jr., John Chamberlin, Henry Chamberlin, Granville Weston, Austin Flint, M. R. Lanckton, J. D. Whitney, Francis Whitney, Riley Watkins, Francis Watkins, Asa Hall, Samuel Williston, William L. Brown, Clark Baker, Lovet R. Mellen, Zenas Crane, Benjamin F. Kittredge, Israel Billings, George W. Branch, and William Barnes : To be held by them, as their security and indemnity against all liabilities, which they have assumed, or may assume and incur, as indorsers, sureties, receiptors, or promisors, for the Ashuelot Manufacturing Company aforesaid. In witness whereof, we have hereto set our hands and the seal of said company, this 13th June 1842.

Henry Marsh, Treasurer, (seal.)

Bushrod Buck, President, (seal.)

Abel Whitney, Agent, (seal.) "

" In consideration of an assignment this day made to us, we agree to see the factory hands paid, and to aid the Ashuelot Manufacturing Company in getting materials to work up their present stock of wool.

" June 13, 1842. Also such other stock as we, or either of us, may aid them in purchasing. The debt to Stephen Warren for soap to be paid. Henry Marsh, attorney for Chamberlins, Weston, Flint, Lanckton, Whitneys, Watkins, Hall, Williston, Brown, Baker, Mellen, Crane, Kittredge, Billings and Branch.                    V. Holden.

       B. Buck, Agent to William Barnes.

       Asahel Buck, jr."

The evidence introduced by the plaintiffs tended to prove that, at the time of making said mortgage and written agreement, all the property therein referred to was delivered to Buck and Holden, the plaintiffs, for themselves and the other mortgagees; that it was understood and agreed that Holden should retain possession thereof; and that, as the property was wrought up and changed, and new property acquired by the proceeds of the mortgaged property, or by new purchase made from other means, whether stock for the factory or goods for the store, the same went into the possession of Holden, who retained so much thereof as was not disposed of, as hereinafter stated, until it was attached by the defendant.

Henry Marsh, called as a witness by the plaintiffs, testified that, on the 11th of June 1842, the personal property of the Ashuelot Company was attached, for more than $3000, upon a debt due to Henry Warren; that the members of the company, a day or two afterwards, agreed with the plaintiffs to give the attaching officer a receipt for said property; that the plaintiffs were unwilling so to do, unless they could have security, and they were told that the company could not give them security without including the other sureties of the company, and were willing that the plaintiffs should take possession; that the plaintiffs were also told that the factory hands and Stephen Warren must be provided for; that when he (the witness) delivered the property to the plaintiffs, it was on condition that said hands and said Warren should be paid before the property should be appropriated to the company's sureties and indorsers.

The witness further testified, that he had no authority to sign the agreement aforesaid, as attorney for the persons therein named, except the relation of their being his sureties; that, about a fortnight after said agreement was made, Billings, who is named therein, and at whose suit the defendant attached the goods in question, expressed satisfaction at what had been done, said the paper was a good mortgage, and advised that it should be put on record; but the witness did not recollect that he showed or mentioned to Billings the agreement of the same date with the mortgage; that Billings applied to the witness, in the autumn of 1842, for money which he had been called on to pay as surety for the company; that the witness thereupon took cloths to New York, and left them there, in Billings's name, which were sold, and $800 of the proceeds paid to him; that other cloths were afterwards left in New York, for which the witness received $500 worth of wool, which he delivered to Billings, who also received more than $1300 dollars from goods consigned by the company, in his name, to houses in New York and Boston.

The witness further testified, that the company was aided by its sureties, in the purchase of wool, upon the condition that, when purchased, it should go into Holden's possession, to be held by him and Buck for the benefit of the persons named in the aforesaid agreement; that they allowed the company to go on, as before, in the purchase of property; that the understanding with Buck and Holden (the plaintiffs) was, that whatever property should be thus purchased should go into Holden's possession, for the benefit of the mortgagees, so as to keep the pledge good.

The witness further testified, that, after the aforesaid mortgage was given, he continued to act as treasurer of the company, and to buy wool for the factory and goods for the store; that all the property, so purchased, went into Holden's possession; that, at different times, some of the mortgagees became sureties for property so purchased; that the witness made payments for the property, from time to time, out of the

proceeds of cloth made at the factory and disposed of by him; and that this was done, on consultation with Holden, who was willing, and Buck also, that the company debts, thus contracted, should be paid by the proceeds of the company property; that in almost every instance the property was paid for, by the witness, out of the funds of the company, or by the sureties themselves; that it was the understanding that the property was to be held by Holden and Buck, according to the terms of the mortgage, for those concerned; and that the property all went into their hands, under the agreement that they should pay Stephen Warren and the factory hands.

Upon this evidence, the defendant contended that the plaintiffs could not recover, because they had made no demand on him, and stated no account of their claims, pursuant to the Rev. Sts. *c.* 90, §§ 78, 79, before service of their writ.

The plaintiffs then offered to prove that the persons who gave to the officer a receipt for the company's property, that was attached on Henry Warren's suit, had paid the judgment recovered by him in that suit, more than sixty days before the commencement of the present action; and they contended that so much of the property replevied by them, as was embraced in the mortgage, had become theirs absolutely, or, if not, yet as Billings was himself the attaching creditor and one of the mortgagees, no demand of payment, or notice of the plaintiff's claim, was necessary; and that, as to the rest of the replevied property, which was acquired after the making of the mortgage, the plaintiffs held it in trust, having the legal title thereto and the right of possession, and therefore no demand or statement of claim was necessary, before bringing this action.

The judge, being of opinion that if the property in the replevied goods was in the plaintiffs, it was such a property that a demand and statement of their claim were necessary, under the provisions of Rev. Sts. *c.* 90, before commencing the action, sustained the defendant's objection, and ruled accordingly. A verdict was taken for the defendant, and the plaintiffs alleged exceptions to the judge's ruling.

This case was decided at the last September term.

*Bishop*, for the plaintiffs.

*Rockwell & Colt*, for the defendant.

HUBBARD, J.    The Rev. Sts. *c.* 90, §§ 78, 79, make no distinction between personal property mortgaged and personal property pledged.    In either case, it is subject to attachment by a creditor of the mortgagor or pawnor, which attachment shall be dissolved by the mortgagee or pawnee demanding the amount for which the property is liable on the mortgage or pledge, if the same is not paid or tendered within twenty four hours after such demand.    So far, therefore, as the question of notice and demand arises in this case, it is unimportant to determine whether the first instrument of June 13th 1842 is to be taken as a mortgage or pledge ; because the same provision respecting the dissolving of the attachment is applicable to it, whether construed as a mortgage or a pledge ; and the paper subsequently made on the same day is virtually a part of the same transaction.    No demand was made by the plaintiffs upon the officer or attaching creditor ; and the question is, whether the circumstances of the respective parties were such as to render such demand unnecessary in order to preserve their lien.

It is argued that Billings was a mortgagee as well as the plaintiffs, as he was a party named in the instrument, and that a demand upon him was unnecessary, as he acted with knowledge of the incumbrance.    But admitting, for the sake of the argument, that he was a mortgagee,.still, as a creditor, he had a right to attach and hold the property, after providing for and removing the liens upon it, and thus bring the mortgage to a close, which otherwise might be as enduring as the company itself, if held to be a valid instrument.

It is contended, however, that a mortgagee cannot attach the property, to obtain payment of the debt secured by the mortgage ; and *Atkins* v. *Sawyer*, 1 Pick. 351, is relied upon in support of the position.    That was the case of a mortgagee of real estate, who sued the note secured by the mortgage, and attached the defendant's right in equity to redeem

the mortgaged estate; and the court held that such attach-ment was an evasion of the debtor's right to redeem the property at any time within three years after the right of foreclosure had commenced, and that a sale of the equity, therefore, under such an attachment, did not defeat or affect the mortgagor's right secured by statute, although the mort-gagee might attach it for any other debt. But the principle of that case has never been extended to mortgages of per-sonal property; and we are of opinion that a mortgagee of personal property, whose debt is payable, may waive his claim under the mortgage, and attach the property to secure his debt, if he see fit, without violating any of the mortgagor's rights, or exposing him to any greater loss in consequence of such attachment.

It is alleged, however, that the pledge must be returned, before property can be attached to secure the debt; and *Cleverly* v. *Brackett*, 8 Mass. 150, is cited to sustain the point. The authority of that case, it may be observed, has been denied.* But we are not called upon here to consider it, be-cause Billings, the attaching creditor, was not in the actual possession of the property pledged. He could make no such personal restoration of the goods; for they were either in the possession of the plaintiffs, as mortgagees, pawnees, or trus-tees, or in possession of the company.

It is also argued, that as the plaintiffs had paid the debt of Warren, the property, which was receipted for to secure that debt, became absolute in them, and was not liable to attach-ment on a suit against the company. But the instrument, under which the plaintiffs claim to hold the property as sure-ties, indorsers, or receiptors, made no distinction between the claim of the plaintiffs as receiptors or sureties; and it con-veyed to the plaintiffs no absolute title to the property, but created a trust by which they were authorized to sell the goods and appropriate the money for the discharge of liabilities.

---

* See *Chapman* v. *Clough*, 6 Verm. 123. *Morse* v. *Woods*, 5 N. Hamp. 297 ₁ U. S. Digest, Attachment, 39. Story on Bailm. § 366

Till such sale took place, their title was that of mortgagees or pawnees, and the goods were therefore subject to attachment.

Treating the instrument as a mortgage, there was no evidence that, at the time of the attachment, sixty days had expired after the condition was broken. New goods were continually substituted in the place of old ones, and new liabilities were incurred, as former ones were satisfied; so that a breach of the condition cannot be inferred from the facts before us.

There is nothing to prove that Billings was a party to the second contract, if that is distinguishable from the first; and his conduct in demanding and obtaining security, from time to time, for his liabilities, tends to prove that he claimed no right under either of the instruments. But, treating the instruments as valid, (though their validity might be questioned,) the after received property rests on the same foundation with that first assigned. All is held by way of mortgage or pledge, and subject to the same legal provisions. Viewing the instrument, then, in the light most favorable for the plaintiffs, yet as they have shown no demand upon the creditor or officer, and no foreclosure sixty days prior to the attachment, they cannot support their claim, and there must be judgment on the verdict.

*Exceptions overruled*